Kurt M. Zitzer (Bar No. 014110)
kzitzer@meagher.com
Spencer T. Proffitt (Bar No. 027455)
sproffitt@meagher.com
MEAGHER & GEER, P.L.L.P.
8800 N. Gainey Center Dr., Suite 261
Scottsdale, Arizona  85258
Telephone: (480) 607-9719
Facsimile:  (480) 607-9780
*Attorneys for Plaintiff AMCO Insurance Co.*

### IN THE UNITED STATES DISTRICT

### COURT FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| AMCO Insurance Company,<br><br>                Plaintiff,<br><br>        vs.<br><br>Dreamstyle Remodeling, Inc., f/k/a Home Resort Living, Inc.; Home Resort Living of Arizona, Inc. dba Home Resort Living, Inc.; Renewal by Andersen LLC; Andersen Corporation; Laura Kirkwood, individually and as trustee for the Laura Kirkwood Revocable living trust; Constance Kirkwood, individually and as trustee for the Constance Kirkwood Revocable Living Trust,<br><br>                Defendants. | Case No. _____<br><br>**COMPLAINT FOR DECLARATORY JUDGMENT** |

Plaintiff, AMCO Insurance Company, pursuant to Rule 57, Fed. R. Civ. P., for its

Complaint for Declaratory Judgment against the Defendants, alleges as follows:

### PARTIES AND JURISDICTION

1.    AMCO Insurance Company ("AMCO") is an Iowa insurance company with

its principal place of business in Des Moines, Iowa, and is therefore a citizen of Iowa.

2.    AMCO brings this action under 28 U.S.C. §§ 2201 and 2202 for declaratory

relief regarding its obligations under the insurance policies described herein.

3.     Defendant Home Resort Living of Arizona, Inc. (FN) dba Home Resort Living, Inc.  ("Home Resort") is a corporation organized under the laws of New Mexico, with its principal place of business in New Mexico, authorized to do business and doing business in Arizona.

4.     Home Resort is named as a defendant in this action because the declaratory relief AMCO seeks involves issues relating to insurance for Home Resort in connection with an underlying lawsuit, *Home Resort Living of Arizona, Inc. (FN) v. Kirkwood et al.*, Arizona Superior Court in and for Santa Cruz County Cause No. CV-11-682 ("Underlying Lawsuit").

5.     Defendant Renewal by Andersen LLC is a limited liability company organized under the laws of Minnesota, with its principal place of business in Minnesota, and doing business in Arizona.

6.     Renewal by Andersen LLC is named as a defendant in this action because the declaratory relief AMCO seeks involves issues relating to insurance for Renewal by Andersen LLC in connection with the Underlying Lawsuit.

7.     Defendant Andersen Corporation is a corporation organized under the laws of Minnesota, with its principal place of business in Minnesota, and doing business in Arizona.

8.     Andersen Corporation is named as a defendant in this action because the declaratory relief AMCO seeks involves issues relating to insurance for Renewal by

Andersen LLC, an Andersen Corporation subsidiary, in connection with the Underlying Lawsuit.

9.    Renewal by Anderson LLC and Andersen Corporation are referenced collectively as "Andersen".

10.    Dreamstyle Remodeling, Inc. ("Dreamstyle") is a corporation organized under the laws of New Mexico, with its principle place of business in New Mexico, and doing business in Arizona.

11.    Dreamstyle is named in this action because it is the primary named insured under certain insurance policies, under which Home Resort and/or Ansersen may seek coverage in relation to the Underlying Lawsuit.

12.    For convenience, Defendants Home Resort, Andersen and Dreamstyle are referenced collectively herein as the "Tendering Defendants".

13.    Defendants Laura Kirkwood ("Laura") and Constance Kirkwood ("Constance") are residents of Santa Cruz County, Arizona.

14.    Upon information and belief, Laura Kirkwood is the trustee of the Laura Kirkwood Revocable Living Trust ("LK Trust"), a trust established under the laws of Arizona.  If discovery reveals a different trustee for the LK Trust, this Complaint will be timely amended to include this trustee.

15.    Upon information and belief, Constance Kirkwood is the trustee of the Constance Kirkwood Revocable Living Trust ("CK Trust"), a trust established under the

3

laws of Arizona.  If discovery reveals a different trustee for the CK Trust, this Complaint will be timely amended to include this trustee.

16.    Laura, Constance, the LK Trust, and the CK Trust ("Claimant Defendants") are named in this action because they are counterclaimants and third-party plaintiffs in the Underlying Lawsuit, and may seek to recover any judgment obtained in the Underlying Lawsuit from the proceeds of one or more policies of insurance issued by AMCO as described herein.

17.    A justiciable controversy exists between AMCO and the Defendants as to whether AMCO has a duty to defend or indemnify the Tendering Defendants in the Underlying Lawsuit in connection with claims asserted by the Claimant Defendants.

18.    Complete diversity exists between the parties:  Plaintiff AMCO is a citizen of Iowa, and Defendants are citizens of Arizona, New Mexico, and Minnesota.

19.    The amount in controversy exceeds $75,000 exclusive of interest and costs in this action.

20.    This court has diversity jurisdiction under 28 U.S.C. § 1332.

21.    This action is properly venued in the United States District Court for the District of Arizona under 28 U.S.C. § 1391, because a substantial part of the events giving rise to the claim alleged in this complaint, including but not limited to the Underlying Lawsuit, occurred in the District of Arizona.

4

## THE UNDERLYING LAWSUIT

22.     This case arises out of a dispute between the Tendering Defendants, manufacturers and installers of custom doors and windows, and the Claimant Defendants, homeowners and consumers of products manufactured and/or installed by the Tendering Defendants.

23.     On March 23, 2010, Claimant Defendants entered into a contract with Home Resort to install windows and doors.  On information and belief, these windows and doors were manufactured by Andersen.

24.     On March 24, 2010, Claimant Defendants executed a change order or agreement with Home Resort to install additional windows; again, these windows and doors were allegedly manufactured by Anderson.  The agreements reached on March 23 and March 24, 2010 are referenced herein as the "March Agreements"

25.     Between March 24, 2010 and July 1, 2010, Home Resort installed the doors and windows, and completed additional work at the request of the Claimant Defendants.

26.     On July 1, 2010, Claimant Defendants executed another contract with Home Resort to install additional windows and doors (the "July Agreement")

27.     During the performance of the July Agreement, in September and October 2010, a dispute arose between the Claimant Defendants and Home Resort regarding the methods and materials used to install the windows and doors.

28.     Upon information and belief, the Claimant defendants refused to pay the balance owed under the March Agreements and the July Agreement.

29.    In 2011, Home Resort filed the Underlying Lawsuit to seek the balance owed under the March Agreements and July Agreement.

30.    On February 28, 2012, Claimant Defendants filed an Answer in the Underlying Lawsuit, including (1) a counterclaim against Home Resort ("Underlying Counterclaim"); and (2) a third-party complaint against Anderson ("Underlying 3P Complaint").  The Underlying Counterclaim and Underlying 3P Complaint are referenced collectively below as the "Underlying Claims".

31.    The Tendering Defendants tendered their defense to Plaintiff AMCO, and Plaintiff defended the Tendering Defendants under a full reservation of rights.

32.    Trial was commenced in the Underlying Lawsuit on March 1, 2016 ("Underlying Trial").

33.    At the time of trial, the Underlying Counterclaim against Home Resort included claims for (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; and (3) filing false lien.

34.    According to relevant disclosure statements by the Claimant Defendants, the Underlying Counterclaim against Home Resort for breach of contract was based on the use of improper products and installation methods (including components).  The Claimant Defendants alleged water leaks, improper sealing, and installation in contravention of manufacturer specifications.

35.    According to relevant disclosure statements by the Claimant Defendants, the Underlying Counterclaim against Home Resort for breach of the implied covenant of good

6

faith and fair dealing was based on installation of the wrong products (including components) and misinformation regarding components, framing, and the depth/thickness of doors.

36.    The Claimant Defendants alleged that they were entitled to reasonable attorney fees and costs in relation to the Underlying Counterclaims for breach of contract and breach of the covenant of good faith and fair dealing.

37.    According to relevant disclosure statements by the Claimant Defendants, the Underlying Counterclaim against Home Resort for false lien alleged that the lien recorded against the Claimant Defendants was based on material misstatements, and that the Claimant Defendants were entitled to statutory damages of $5,000 and reasonable attorney fees and costs.

38.    At the time of trial, the Underlying 3P Complaint against Andersen included claims for (1) breach of warranty; and (2) fraud.

39.    According to relevant disclosure statements by the Claimant Defendants, the Underlying 3P Complaint against Andersen for breach of warranty alleged that Andersen promised as follows:

> Installation of your Renewal by Andersen window or door product and other Andersen company brand products by an authorized installer is warranted for a period of two (2) years from the date of original installation.  During this period should your Renewal by Andersen window or door fail to perform according to our specifications due to improper installation, we will bring the workmanship up to our professional standards at no cost to you.

7

40.     The Claimant Defendants alleged that Andersen breached this warranty by failing to pay for the repair or replacement of the windows and doors installed by Home Resort.

41.     According to relevant disclosure statements by the Claimant Defendants, the Underlying 3P Complaint against Andersen for fraud alleged that Andersen never intended to honor its warranty, described above, or that Andersen was guilty of fraud for allowing the warranted repairs to be performed by Home Resort rather than by Andersen or other authorized installers.

## INSURANCE POLICIES

### A.     Policies Issued to Home Resort

42.     AMCO Insurance Company issued a commercial general liability policy, policy no. ACP GLAO 7271329276, to Home Resort Living Inc., for the policy period from May 1, 2010 – May 1, 2011.  This policy was renewed under policy no. ACP GLAO 7281329276 for the policy period from May 1, 2011 – May 1, 2012, policy no. ACP GLAO 7291329276 for the policy period from May 1, 2012 – May 1, 2013; and policy no. ACP GLAO 7201329276 for the policy period of from May 1, 2013 – May 1, 2014. (collectively, Home Resort Policies)

43.     Renewal by Anderson is listed on the Schedule of Insureds for the Home Resort Policies.  The limits of liability are $1,000,000 each occurrence, with a $2,000,000 general aggregate limit and $2,000,000 products/completed operations aggregate limit. There is a $1,000 per claim deductible for property damage liability.

8

44.     The main grants of coverage and exclusions for the Home Resort Policies are provided on form CG0001 1207.

45.     Endorsements provided on forms CG7035 1193 and CG7288 0310 provide a $5,000 sublimit of liability for property damage to "that particular part of real property on which you or any contractors or subcontractors working directly or indirectly or on your behalf are performing operations" or "that particular part of any property that must be restored, repaired or replaced because 'your work' was incorrectly performed on it."

46.     A complete copy of Policy No. ACP GLAO 7271329276 is enclosed herewith as **Exhibit A.**

**B.      Policies Issued to Dreamstyle**

47.     AMCO Insurance Company issued to Dreamstyle Remodeling Inc. a commercial general liability policy, policy no. ACP GLAO 7211329276 for the policy period from May 1, 2014 – May 1, 2015.  This policy was renewed under policy no. ACP GLAO 7221329276 for the policy period from May 1, 2015 – May 1, 2016 (collectively, "Dreamstyle Policies")

48.     Home Resort Living Inc. and Renewal by Anderson are listed on the Schedule of Insureds for the Dreamstyle Policies.  The limits of liability are $1,000,000 each occurrence, with a $2,000,000 general aggregate limit and $2,000,000 products/completed operations aggregate limit.  There is a $1,000 deductible for property damage liability for these policies ("per claim" for the policy period from May 1, 2014 –

May 1, 2015, and "per occurrence" for the policy period from May 1, 2015 – May 1, 2016)

49.    The main grants of coverage and exclusions for the Dreamstyle Policies are provided on form CG0001 0413.

50.    Endorsements on forms CG7035 0112 and CG7323 1111 provide coverage otherwise excluded under Form CG0001 1207.  Like the forms included in the Home Resort Policies, these forms restrict coverage to a $5,000 sublimit of liability for property damage to "that particular part of real property on which you or any contractors or subcontractors working directly or indirectly or on your behalf are performing operations" or "that particular part of any property that must be restored, repaired or replaced because 'your work' was incorrectly performed on it."

51.    A complete copy of Policy No. ACP GLAO 7211329276 is enclosed herewith as **Exhibit B.**

**C.    Policy  Provisions, Definitions, Conditions, Exclusions, and Limitations.**

**52.**    The Home Resort Policies and the Dreamstyle Policies (collectively, "AMCO Policies") contain certain provisions, conditions, definitions, exclusions and limitations.

**53.**    Forms CG0001 1207 and CG0001 0413, for the Home Resort Policies and the Dreamstyle Policies respectively, provide as follows:

**SECTION I—COVERAGES**

10

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1. Insuring Agreement**

    **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.

    **b.** This insurance applies to "bodily injury" and "property damage" only if:

        **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

        **(2)** The "bodily injury" or "property damage" occurs during the policy period [* * *]

**2. Exclusions**

    This insurance does not apply to:

[* * *]

    **j.** **Damage To Property**

    "Property damage" to: ***

        **(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

        **(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it. ***

    Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

    **k.** **Damage To Your Product**

    "Property damage" to "your product" arising out of it or any part of it.

    **l.** **Damage To Your Work**

11

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

    **(1)**    A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

    **(2)**    A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

    **(1)**    **"Your product";**

    **(2)**    **"Your work"; or**

    **(3)**    **"Impaired property";**

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it. **\*\*\***

**SUPPLEMENTARY PAYMENTS – COVERAGES A AND B**

1. We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

    a.   All expenses we incur;

    [\* \* \*]

**e.** All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

These payments will not reduce the limits of insurance.

## SECTION V—DEFINITIONS

**3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time. ***

**8.** "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

   **a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

   **b.** You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

   **a.** The repair, replacement, adjustment or removal of "your product" or "your work"; or

   **b.** Your fulfilling the terms of the contract or agreement. [* * *]

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions. ***

**16.** "Products-completed operations hazard":

   **a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

      **(1)** Products that are still in your physical possession; or

      **(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

         **(a)** When all of the work called for in your contract has been completed.

13

**(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

**(c)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**17.** "Property damage" means:

**a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it. ***

**21.** "Your product":

a. Means:

**(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

**(a)** You;

**(b)** Others trading under your name; or

**(c)** A person or organization whose business or assets you have acquired; and

**(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

b. Includes

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

14

**(2)**     The providing of or failure to provide warnings or instructions.

**22.** "Your work":

   a.   Means:

   (1) Work or operations performed by you or on your behalf; and

   (2) Materials, parts or equipment furnished in connection with such work or operations.

   b.   Includes

   (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

   (2) The providing of or failure to provide warnings or instructions.

54.     The Expanded Property Damage endorsement (Form CG7035 1193 in the Home Resort Policies, and Form CG 7035 0112 in the Dreamstyle Policies) eliminates certain property damage exclusions, but imposes a $5000 limit of liability for the coverage available under the endorsement:

**EXPANDED PROPERTY DAMAGE COVERAGE**

For the purposes of this [endorsement/coverage] only:

   1.   COVERAGE A (SECTION I) is amended as follows:

   a. Exclusions j.(3), j(5), and j(6) are deleted in their entirety.[1] * * *

   2.   The most we will pay for damages because of "property damage" coverage provided by this endorsement arising out of any one "occurrence" is $5,000.

---

[1] This format comes from form CG7035 1193 at Paragraph A.1.a; however, Form CG7035 0112 contains the same language at Paragraph A.1. The paragraph numbering in this Complaint comes from the Home Resort Policies exclusively, but the Dreamstyle policies contain virtually identical language unless otherwise noted.

15

55.    Similarly, the Contractors Enhanced Endorsement amends certain property damage exclusions, but provides that "the most we will pay for 'property damage' provided by this coverage in any one 'occurrence' is $5,000."

56.    Other policy terms, conditions, exclusions, or provisions of the AMCO Policies potentially apply to limit or preclude coverage for the Amended Counterclaim.

**AMCO'S DEFENSE UNDER RESERVATION OF RIGHTS**

57.    AMCO does not have an obligation to indemnify the Tendering Defendants in connection with the Underlying Lawsuit.

58.    The causes of action and damages set forth in the Underlying Counterclaim and the Underlying 3P Complaint are not covered by the AMCO Policies for reasons that include, but are not necessarily limited to, the following:

a.    The claims and causes of action in the Underlying Counterclaim and the Underlying 3P Complaint seek to recover the Claimant Defendants' economic damages resulting from a commercial dispute arising out of the breach of one or more contractual provisions; therefore, such claims do not seek to recover damages because of "property damage" within the meaning of the AMCO Policies.

b.    The claims and causes of action in the Underlying Counterclaim and 3P Complaint seek the replacement or reinstallation of doors and windows manufactured by Andersen and installed by Home Resort; such claims do

16

not allege "property damage" caused by an "occurrence" as required for coverage under the AMCO Policies, and as construed under Arizona law;

c.   To the extent the Underlying Claims allege "property damage" caused by an "occurrence" (if any), damage occurring during the installation process is subject to exclusions j.(5) & (6), and are subject to a $5,000 sublimit under the Expanded Property Damage endorsement and the Contractors Enhanced Endorsement.

d.   To the extent the Underlying Claims allege "property damage" caused by an "occurrence" (if any), damage to the doors and windows themselves are subject to exclusions k., l. (to the extent such damage occurred after installation), and m..  Exclusion m. also excludes coverage for any "property damage" to "impaired property", which includes property that "cannot be used or is less useful" because it incorporates the doors and windows manufactured by Andersen and installed by Home Resort.

e.   Attorney fees taxed against the insured(s) are expressly excluded from payment under the "**SUPPLEMENTARY PAYMENTS**" provisions in the AMCO Policies.

59.   In short, indemnity payments for the Underlying Claims are excluded or limited to $5,000 for the repair or replacement of windows and doors, under the AMCO policy in place at the time the windows and doors were installed.  Claimant Defendants have not established any "property damage" caused by an "occurrence" that is not

excluded under the AMCO Policies, and attorney fees taxed against the insured(s) are expressly precluded from coverage under the "**SUPPLEMENTARY PAYENTS**" provisions,

60.    Other policy terms, conditions, exclusions, or provisions potentially apply to limit or preclude coverage for the Underlying claims.

61.    AMCO has defended the Tendering Defendants against the claims alleged in the Underlying Lawsuit while reserving all rights under the AMCO Policies, and applicable law.

62.    AMCO's reservation of rights raised the above coverage defenses as well as other potentially applicable terms, conditions and exclusions, and expressly reserved the right to have a court of law determine whether AMCO has, or ever had a duty to defend or indemnify the Tendering Defendants in relation to the Underlying Lawsuit.

## **FIRST CLAIM FOR RELIEF**

**(DECLARATORY JUDGMENT – INDEMNITY FOR REPAIR / REPLACEMENT)**

63.    AMCO realleges Paragraphs 1 through 62 above as though fully set forth in this claim for relief.

64.    The Underlying Claims do not allege claims or damages that are covered by the AMCO Policies; specifically, they do not allege "property damage" caused by an "occurrence" as those terms are used under the AMCO Policies and construed under Arizona law.

65.     Alternatively, the Underlying Claims are subject to a $5,000 sublimit under the AMCO Policy issued at the time of installation.

66.     The Tendering Defendants seek indemnity for the Underlying Claims under the AMCO Policies.

67.     The Claimant Defendants may seek to satisfy any judgment they obtain against, or settlement entered into with, the Tendering Defendants from the policy proceeds of the AMCO Policies.

68.      An "actual controversy" exists within the meaning of 28 U.S.C. §§ 2201 and 2202, between AMCO and Defendants regarding coverage available under the AMCO Policies.

69.     AMCO is entitled to a judicial declaration that it has no obligation under the AMCO Policies to indemnify the Tendering Defendants in connection with the Underlying Claims.

70.     AMCO is entitled to a judicial declaration that it has no obligation under the AMCO Policies to satisfy any judgment Claimant Defendants obtain against, or settlement Claimant Defendants enter into with, Tendering Defendants from the policy proceeds of the AMCO Policies.

71.     Alternatively, AMCO is entitled to a judicial declaration that its indemnity obligations are capped at the $5,000 sublimit of liability for property damage occurring during installation, under the AMCO Policy in effect at the time of installation, or such other amount that this Court deems just and fit under relevant policy provisions.

19

72.    AMCO is also entitled to such other relief as the court deems just and equitable, including an order requiring the Tendering Defendants to reimburse AMCO for defense costs incurred in defending the Tendering Defendants against uncovered claims in the Underlying Lawsuit.

73.    Because this is an action arising out of contract, AMCO is entitled to its attorney fees incurred herein as authorized by A.R.S. § 12-341.01.

## SECOND CLAIM FOR RELIEF

### (DECLARATORY JUDGMENT – Attorney Fees)

74.    AMCO realleges paragraphs 1 through 73 above as if fully set forth in this claim for relief.

75.    The Underlying Crossclaim and Underlying 3P Complaint seek attorney fees in the event the Claimant Defendants are successful parties in an action arising under contract, or in their claim for false lien.

76.    Attorney fees are expressly excluded under AMCO Policy provisions concerning **SUPPLEMENTARY PAYMENTS:**  "We will pay . . . [a]ll court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured."

77.    Attorney fees are not "sums that the insured becomes legally obligated to pay as damages because of . . . 'property damage'" under the insuring agreements of the AMCO Policies.

78.    The Tendering Defendants seek coverage, defense and indemnity, for the Underlying Claims, which may include an award of attorney fees.

79.    The Claimant Defendants may seek to satisfy any judgment they obtain against, or settlement entered into with, the Tendering Defendants from the policy proceeds of the AMCO Policies.

80.    The Judgment or settlement for the Underlying Claims may include an award of attorney fees.

81.    An "actual controversy" exists within the meaning of 28 U.S.C. §§ 2201 and 2202, between AMCO and Defendants regarding coverage available under the AMCO Policies for any award of attorney fees.

82.    AMCO is entitled to a judicial declaration that it has no obligation under the AMCO Policies to indemnify the Tendering Defendants, or pay the Claimant Defendants, for any portion of a judgment, settlement, or award that may include an award of attorney fees in connection with the Underlying Lawsuit.

83.    Alternatively, AMCO is entitled to a judicial declaration limiting coverage for attorney fees to the extent allowed and appropriate under the AMCO Policies, as construed by this Court.

84.    AMCO is also entitled to such other relief as the court deems just and equitable, including an order requiring the Tendering Defendants to reimburse AMCO for defense costs incurred in defending the Tendering Defendants against uncovered claims in the Underlying Lawsuit.

21

85.     Because this is an action arising out of contract, AMCO is entitled to its attorney fees incurred herein as authorized by A.R.S. § 12-341.01.

## PRAYER FOR RELIEF

WHEREFORE, AMCO Insurance Company respectfully asks this Court to enter judgment against Defendants as follows:

A.     Declaring that AMCO Policies do not provide coverage for the Underlying Claims in the Underlying Lawsuit;

B.     Declaring that AMCO has no obligation to indemnify the Tendering Defendants, or pay the Claimant Defendants, for any award of attorney fees, in the Underlying Lawsuit;

C.     Declaring that AMCO has no obligation to indemnify the Tendering Defendants for any judgment, or any portion of any judgment, that does not represent "damages" for "property damage" caused by an "occurrence" as those terms are used in the AMCO Policies, and specifically declaring what portion of any judgment (if any) represents covered "damages";

D.     Awarding AMCO its attorney fees incurred herein as authorized by A.R.S. § 12-341.01; and

G.     Awarding such other relief as the court deems just and equitable, including ordering that Tendering Defendants reimburse AMCO for attorney fees and costs incurred by AMCO for Tendering Defendants defense of uncovered claims in the Underlying Lawsuit.

22

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

## **JURY DEMAND**

Plaintiff demands a trial by jury on all issues triable to a jury under Arizona Law.

RESPECTFULLY SUBMITTED this 24th day of March, 2016.

MEAGHER & GEER, P.L.L.P.

By: /s/ Spencer T. Proffitt
Kurt M. Zitzer
Spencer T. Proffitt
**MEAGHER & GEER, P.L.L.P.**
8800 N. Gainey Center Dr., Ste. 261
Scottsdale, Arizona 85258
Attorneys for Plaintiff

23

1

2

### <u>CERTIFICATE OF SERVICE</u>

3

I hereby certify that on March 24th, 2016, I electronically transmitted the attached documents to the clerk's office using the CM/ECF system for filing, and thereby transmitted a notice of electronic filing to the following CM/ECF registrants:

4

5

Clerk of Court

6

U.S. District Court

District of Arizona – Phoenix

7

401 W. Washington Street, Suite 130

Phoenix, Arizona  85003

8

9

By: /s/ Vanessa Henderson

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

24